UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK
_____

KATHRYN MARIE OLIVER,

                                Plaintiff                   DECISION AND ORDER

-vs-

                                                     16-CV-6278 CJS

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

## APPEARANCES

For the Plaintiff:                Brandi C. Smith, Esq.
                                 Kenneth R. Hiller, Esq.
                                 Law Offices of Kenneth Hiller, PPLC
                                 6000 North Bailey Avenue, Suite 1A
                                 Amherst, New York 14226

For the Defendant:           Lorie E. Lupkin, Esq.
                                 Social Security Administration
                                 Office of General Counsel
                                 26 Federal Plaza, Room 3904
                                 New York, New York 10278

                                 Kathryn L. Smith, A.U.S.A.
                                 Office of the United States Attorney
                                 for the Western District of New York
                                 100 State Street
                                 Rochester, New York 14614

## INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Kathryn Oliver ("Plaintiff") for Social Security Disability

Insurance Benefits ("SSDI").  Now before the Court is Plaintiff's motion (Docket No.

[#10]) for judgment on the pleadings and Defendant's cross-motion [#12] for judgment

on the pleadings.  Plaintiff's motion is denied and Defendant's motion is granted.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the parties' submissions, which

contain detailed recitations of the pertinent facts.  The Court has reviewed the

administrative record [#7] and will reference it only as necessary to explain this Decision

and Order.

On July 30, 2007, Plaintiff went to Thambirajah Nagendra, M.D. ("Nagendra") for

"follow up [regarding] nonischemic cardiomyopathy, tobacco abuse [and],

anxiety/depression." (392).  Plaintiff indicated that she was having "midthoracic back

pain at times," had lost her job, and was applying for Social Security disability benefits.

(392).  However, Plaintiff also reportedly stated that she was planning to work with her

daughter at a child daycare center. (392).

On November 21, 2011, Plaintiff complained to her primary care physician,

Rebecca Wadsworth, M.D. ("Wadsworth"), that she felt fatigued, and had been having

throbbing pain in her legs for several months, as well as pain and weakness in her arms

and shoulders. (383).  Upon examination, Wadsworth reported that Plaintiff had full

range of motion in her arms, with normal grip strength, and some tenderness "in the

outer thigh area." (383).  Wadsworth opined that Plaintiff's complaints might be related

to her thyroid, or to deficiencies of magnesium and/or Vitamin D. (383).

On April 2, 2012, rheumatologist Rashmi Khadilkar, M.D., reported that Plaintiff

was complaining of pain in her right foot, and pain in the middle of her back that

became worse when doing "laundry or dishes." (364).  Khadilkar noted that recent x-

rays showed "mild degenerative changes" of the thoracic spine, and indicated that the "etiology [of Plaintiff's pain] remain[ed] unclear." (366).

On November 11, 2012, Plaintiff was working in the bakery at Walmart, when she injured her shoulder and back while lifting a box of dough. On November 16, 2012, Dr. Wadsworth reported that Plaintiff "developed low back pain and then had a 30 pound box of frozen [dough] fall on her right shoulder." (373). Plaintiff told Wadsworth that "[a]s the night [of the day of the injury had] progressed," she also developed pain in her "right groin" and foot. (373). Wadsworth noted that Plaintiff had a history of chronic obstructive pulmonary disease ("COPD"), "cardiomyopathy, nonischemic," hyperlipidemia, depression, anxiety and hypertension, and had previously had surgery for bilateral carpal tunnel release and plantar fasciectomy. (374). After examination, Wadsworth's assessment was "right rotator cuff injury" and "abdominal wall hernia possible" (373).

A few days later, Plaintiff was examined by Adbullah Al-Mahayri, M.D. ("Al-Mahayri"), concerning the possible hernia. (374-377). Al-Mahayri's assessment was "musculoskeletal pain, no evidence of hernia." (377).

On November 16, 2012, Plaintiff was seen by orthopedic specialist Daniel Alexander, M.D. ("Alexander"). Alexander's impression was "right shoulder derangement." (438). Alexander noted that Plaintiff was working "with restrictions," and opined that she had a "moderate, temporary" degree of disability. (438).

On December 3, 2012, Wadsworth examined Plaintiff again, at which time Plaintiff was complaining of increased "low back and thoracic pain," including pain between her shoulder blades. (378). Wadsworth noted, however, that Plaintiff's

shoulder and abdominal pain "ha[d] pretty much disappeared or gotten much better." (378). Upon examination, Plaintiff was "mildly tender" between her shoulder blades and in her lower back. (378). Plaintiff had been attending physical therapy ("PT") and taking Flexeril and Tylenol PM. Wadsworth asked to see Plaintiff again in two weeks, and indicated that she would remain out of work until December 17, 2012, but could return to work thereafter. (378-379).

On December 14, 2012, Dr. Alexander examined Plaintiff again, and this time his impression was "right shoulder rotator cuff tendonitis." (433). Alexander opined that Plaintiff had only a "mild, temporary" disability, but noted that Dr. Wadsworth had excused Plaintiff from work. (434).

On December 17, 2012, Wadsworth noted that Plaintiff had returned to the office, and that "not much has changed." Wadsworth indicated that Plaintiff was "tender" over the right rotator cuff, and was also "tender across [the] thoracic paraspinal areas," and her assessment was "thoracic back pain, right should injury." (380). Wadsworth stated that Plaintiff would be examined by an orthopedic specialist and would have an MRI. (380). Wadsworth indicated that Plaintiff should remain out of work until January 2, 2013, to allow her to see a orthopedic specialist regarding her complaint of back pain. (380).

On December 28, 2012, Alexander examined Plaintiff again, to evaluate her right shoulder and thoracic spine. (435). Alexander noted that x-rays of the thoracic spine showed "multilevel thoracic disc disease with some kyphosis as well but no compression fractures," for which he recommended "conservative" treatment. (436). As for whether Plaintiff was working at that time, Alexander wrote, "No but she was given

4

restrictions," and indicated that she had a "moderate" disability and had not reached maximum medical improvement. (436).

On December 31, 2012, Plaintiff reportedly told Alexander that she was having pain in her lower back, "with activities," which she attributed to her injury at work on November 11th. (427). Alexander's physical examination was unremarkable, though he noted that an x-ray showed "degenerative changes in the lower back." (427-428). Alexander's impression was "low back strain," though he did not indicate that Plaintiff had any degree of disability relating to such condition. (428, 432).

On January 25, 2013, Dr. Alexander noted that an MRI of Plaintiff's lower back had confirmed "lumbar disc disease," for which he recommended that she receive an epidural pain injection. (429-430).

On January 30, 2013, Steven Hausmann, M.D. ("Hausmann"), a non-treating physician, examined Plaintiff concerning her work-related injury at the request of Walmart's worker's compensation carrier. (407-410). Plaintiff reportedly told Hausmann that she had an MRI on December 22, 2012, which showed "3 bulging discs" in her lumbosacral spine. (407). Plaintiff told Hausmann that she had "intense pain when using the right arm," as well as numbness in the arm and hand, as well as "low back pain, more on the left than right, [which was] worse with bending." (407). Plaintiff indicated that she was still working at Walmart, "with light or restricted duties." (407). Hausmann reported that he had reviewed Plaintiff's medical records, including an MRI of the lumbar spine, dated January 21, 2013, and an MRI of the right shoulder, dated December 22, 2012. (408-409). According to Hausmann, the shoulder MRI showed "a full-thickness [rotator cuff] tear," while the lumbar spine MRI showed

> multilevel degenerative disc disease . . . from L4 through S1, broad based disc bulges were seen at those levels, and suggestion of annular fissure or tear posteriorly at L4-L5. No evidence of central canal stenosis or foraminal encroachment. There is also a mild broad based disc bulge at L3-L4. Overall, the findings were that of degenerative disc disease of the lumbar spine.

(408). Upon examination, Hausmann found that Plaintiff had tenderness in the lower back and right shoulder area, without muscle spasm. (409). Hausmann indicated that Plaintiff's shoulder pain was likely related to her work injury, and that her back pain may also have been a "strain injury," but that the degenerative changes on the MRI were not causally related to the injury on November 11, 2012. (409). Hausmann's diagnosis was "right rotator cuff tear," and "lumbar strain," and he recommended that Plaintiff have surgery for the shoulder, after which, he anticipated, she would need "12 to 16 weeks" to recover. (409).

On February 11, 2013, orthopedic specialist David Cywinski, M.D. ("Cywinski") reported that Plaintiff was complaining of increased neck pain. (415). Cywinski noted that prior diagnostic testing had revealed degenerative changes of the cervical spine, and requested a new MRI test. (416). Cywinski opined that Plaintiff had a "mild to moderate" temporary disability. (416).

On February 20, 2013, Dr. Cywinski administered a pain injection for Plaintiff's lumbar pain, involving the disc bulge at L4-L5 and L5-S1. (423).

On March 6, 2013, Dr. Alexander performed rotator-cuff-repair surgery on Plaintiff, and indicated that he achieved "an excellent repair." (422).

On March 18, 2013, Plaintiff was re-examined by Dr. Cywinski, for complaints involving the cervical spine. (413-414). Cywinski noted that an MRI showed osteophyte

formation at C5-C6 with no evidence of herniation. (413). Cywinski reported that Plaintiff had "tenderness to palpation about the right paraspinal musculature," and pain with flexion and extension. (413). Cywinski diagnosed "cervicalgia," and recommended physical therapy. (413).

On April 11, 2013, Dr. Alexander noted that plaintiff had "good passive motion but decreased active motion of the right shoulder" following surgery, and that the incision was "healing nicely." (411). Alexander indicated that plaintiff could begin physical therapy rehabilitation for the shoulder. (411). Alexander stated that Plaintiff had a "total temporary" disability, and had not reached maximum medical improvement following surgery. (412).

On May 1, 2013, Dr. Alexander saw Plaintiff for "follow-up of her lumbar spine" complaints. (547). Plaintiff reported having "exquisite" pain in her lower back, despite having received an epidural pain injection. (547). Upon examination, Alexander found that Plaintiff had positive straight-leg raising tests bilaterally, and was tender along the paraspinal muscles with palpation. (547). Alexander opined that Plaintiff had a moderate temporary disability. (548).

On May 22, 2013, Dr. Hausmann again examined Plaintiff, and his diagnoses were "right rotator cuff tear [post surgical repair," "lumbar strain" and "possible cervical strain." (493). Hausmann further stated: "Her disability at this time would be at the moderate level. . . . Presently, she could return to work with no overhead lifting with the right upper extremity. I would advise avoidance of repetitive bending or stooping. I would restrict her lifting to no more than 10 pounds." (493).

On May 24, 2013, Plaintiff consulted with spine surgeon M. Gordon Whitbeck,

M.D. ("Whitbeck") concerning her neck pain. (481-482). Plaintiff reported having "constant," "dull, aching" neck pain, which was "exacerbated by extremes of neck motion." (481). Upon examination, Whitbeck found some "moderate" restriction of motion in the neck, with "discomfort at extremes." (482). Whitbeck recommended that Plaintiff have "a neurologic evaluation including electrodiagnostic testing" to rule out cervical radiculitis. (482). Whitbeck doubted that surgery would help, and stated, "Hopefully, physical therapy and the passage of time will be helpful." (482). Whitbeck further opined that Plaintiff was not disabled due to her neck pain, but rather, that "any disability [was] related to her right shoulder issues and potentially to her low back." (482).

On June 6, 2013, Dr. Cywinski indicated that Plaintiff was recovering well from her rotator-cuff surgery, though her strength was "lacking," and that she was going to physical therapy. (541). Cywinski stated that Plaintiff was temporarily disabled and had not reached maximum medical improvement following her surgery. (541).

On June 28, 2013, Dr. Alexander indicated that Plaintiff had a 33% temporary disability due to "lumbar disk disease," and was "disabled," though he declined to fill out the portion of the form which listed particular areas of limitation. (533).

On August 6, 2013, Dr. Whitbeck examined Plaintiff and reported that her "clinical situation [wa]s unchanged." (500). In particular, he stated, "She continues to experience some neck pain as well as some radiation into her right upper extremity, not usually radiating below the elbow." (500). Whitbeck noted that Plaintiff was not employed, which he assumed was due to her rotator-cuff surgery. (500). Whitbeck offered to perform surgery, since her symptoms had not improved with conservative

treatment. (500).  However, Whitbeck stated, "Despite her symptoms, she is not considered to have any degree of disability as a consequence of her cervical spine issues." (501).

On August 26, 2013, Dr. Hausmann examined Plaintiff again, in connection with her worker's compensation claim.  Haussmann noted that Plaintiff had received successful rotator-cuff surgery, as well as physical therapy, and stated: "Her symptoms now consist of clicking in the right shoulder, sometimes it gets stuck.  She cannot sleep on the shoulder well.  She has neck spasms and occasional numbness in the right hand, also mid and lower back pain." (487).  Hausmann reported that Dr. Alexander had indicated that injections had improved Plaintiff's lower back pain, and that Dr. Whitbeck was offering surgery to address Plaintiff's neck pain, though Whitbeck had "state[d] [that] despite her symptoms she [was] not considered to have any degree of disability as a consequence of her cervical spine issues." (488).  After examining Plaintiff, Hausmann stated, in pertinent part:  "Her disability at this time is mild.  Further treatment is optional for her.  Her doctors recommended a cervical fusion[, but] right now as I examined her, she has no radicular findings and she has fairly good cervical range of motion." (488).  Hausmann stated that Plaintiff reported having "intermittent" neck symptoms. (488).  Hausmann opined that Plaintiff had reached maximum medical improvement concerning her shoulder surgery, and could return to work at her bakery job, "with no overhead lifting with the right arm on a repetitive basis and avoidance of any lifting in excess of 30 to 40 pounds due to her degenerative disease in the neck and likely back as well." (489).

On September 17, 2013, Dr. Cywinski examined Plaintiff concerning her thoracic

back pain. (571). Plaintiff claimed to have "quite a bit of discomfort," that was not relieved by pain injections. (571). Upon examination, Cywinski found that Plaintiff was in no acute distress, but had tenderness along her spine, with negative straight-leg raise test. (571). Cywinski opined that Plaintiff was able to work "without restrictions." (571).

On September 24, 2013, Dr. Alexander stated that Plaintiff had only "mild postoperative symptoms" following her rotator-cuff surgery, and was "able to work with restrictions" related to her shoulder. (516-517); *see also*, (557) (same opinion in November 2013).

On October 30, 2013, Dr. Alexander examined Plaintiff in connection with her thoracic back pain, stating:

> She is here for followup of her MRI findings of the thoracic spine. There is a suspicion for an intradural herniation of the spine cord at T7-T8. There is also at the same level a small syringomyella of the spinal cord at T7-T8. She also has a disc protrusion at T8-T9 compromising left ventral cerebrospinal fluid. She continues to have pain and discomfort in that same area. She tells me she does have some pain that radiates laterally on both sides into her axilla.

(561). Upon examination, Alexander noted that Plaintiff "ha[d] some discomfort of the spine upon palpation," but no swelling or bruising. (561). Alexander stated that Plaintiff was "able to work with restrictions." (562).

On March 26, 2014, Dr. Whitbeck saw Plaintiff again for her complaints of neck pain. (498). Whitbeck's examination was unremarkable, but Plaintiff indicated that she continued to have "axial neck pain," with perceived weakness in her hands. (498). Whitbeck stated: "The patient has known cervical spondylosis at C5-6 with complaints

of axial neck pain and right appendicular symptoms reminiscent of a possible C6 radiculopathy." (499). Whitbeck indicated that he was recommending surgery, though he first wanted to review electrodiagnostic studies. (499). Regarding Plaintiff's ability to work, Whitbeck stated: "She is found to have a moderate temporary disability with no lifting more than 25 lbs pending follow-up." (499).

On April 17 2014, Dr. Whitbeck operated on Plaintiff's neck and performed a cervical fusion at C5-C6. (496). Following surgery, Whitbeck's prognosis was "hopeful for significant relief of her neurologic symptoms as well as her neck pain." (497).

On June 10, 2014, Dr. Alexander indicated that Plaintiff "[wa]s able to work light duty." (505).

On June 11, 2014, Dr. Whitbeck reported that Plaintiff's "clinical situation overall ha[d] improved significantly," and that she had only "minimal" neck pain. (603). Whitbeck stated, "She continues to have a marked temporary disability and [is] capable of lifting up to 10-15 lbs as long as it is below shoulder level." (603).

On September 2, 2014, Whitbeck noted that Plaintiff was continuing to recover well from her neck surgery. (627). Whitbeck also indicated that he wanted to "schedule a formal evaluation for follow-up of her low back and sciatic complaints." (627). Although Plaintiff was still recovering from surgery, Whitbeck opined that she was "capable of working in a light-duty capacity with no lifting over 10-15 lbs." (627).

PROCEDURAL BACKGROUND

On April 29, 2013, Plaintiff filed for Social Security Disability Insurance ("SSDI") benefits, due to COPD, "dilated cardiomyopathy," "high blood pressure," "migraines," "bilateral torn rotator cuff," "bulging discs," "depression," "bilateral carpal tunnel,"

"plantar fasciitis," "pinched nerves in neck," "arthritis," and "high cholesterol." (176).

Plaintiff claims to have become disabled on November 11, 2012, the day of the accident at Walmart. (176). The record indicates that during 2012, Plaintiff had reported earnings of only $1,581, and had only been working at Walmart a few weeks when she injured herself. (35, 276). Plaintiff had no reported earnings for 2008, 2009, 2010 or 2011, and had apparently also applied for SSDI in 2010. (177, 276, 282). As noted above, the record indicates that she was considering applying for SSDI as early as 2007. (392).

On July 19, 2013, the Social Security Administration denied the claim. (196-199). Plaintiff requested a hearing, and on August 27, 2014, she and her attorney appeared before an Administrative Law Judge ("ALJ") for a hearing. As of that date, Plaintiff was 56 years of age (34), had completed high school (38, 287), and had prior work experience as an accounts-payable clerk (skilled, sedentary) and apple tree trimmer (unskilled, medium). (51). At the hearing, Plaintiff's counsel argued that "due to the combination of [Plaintiff's] impairments[,] including [work-related injuries to her shoulder and neck], but also COPD and uncontrolled high blood pressure, that she [was] unable to perform even sedentary work." (34).

The hearing took place approximately twenty months after Plaintiff's last-insured date. As noted above, during the period following Plaintiff's last-insured date, she had successful surgery on her shoulder and neck. At the hearing, Plaintiff testified that her back (lower and upper), hands, right arm and legs gave her the most pain. (41). Regarding her legs, Plaintiff testified that when she went to bed, her legs would become numb, and then become painful and wake her. (41). Regarding her back, Plaintiff

testified that she felt "a terrible burning sensation across the middle of [her upper] back," and a "kink" in her lower back. (41). Plaintiff stated that her upper back pain was aggravated by activities involving the use of her arms, such as folding laundry, and that her lower-back pain was aggravated by "any kind of bending, or pulling," such as using a vacuum cleaner. (42). Regarding her hands, Plaintiff indicated that she had difficulty carrying things, such as a "jar of mayonnaise," and that her right hand "seem[ed] to be worse." (42). Regarding her neck, Plaintiff indicated that surgery had significantly reduced her pain. (42) ("It still has some pain, but nothing like [before the surgery]."). Regarding her right shoulder, Plaintiff indicated that surgery "hadn't improved [her condition] as much as" she had hoped, and that she had little strength in her right arm for lifting. (43).[1] Plaintiff stated that she could lift ten pounds, sit for "about 15, 20 minutes," stand for no more than "25 minutes maybe," and walk "maybe a block." (47-48).

The ALJ took testimony from a vocational expert (VE), and asked her to consider a hypothetical claimant of Plaintiff's same age, education and work experience, who could perform light work, but with no overhead reaching with the right arm, and no use of ladders, ropes, scaffolds, hazardous machinery or unprotected heights. (51). The VE indicated that such a person could perform Plaintiff's past work as an accounts payable clerk. (51). Upon further questioning, the VE stated that the hypothetical claimant

---

[1]The medical evidence is to the contrary. On May 22, 2013, shortly after her shoulder surgery, Dr. Hausmann reported that Plaintiff had 4/5 strength in the right "deltoid, biceps, triceps and grip strength." (493). Shortly thereafter, on June 2, 2013, Dr. Whitbeck reported that Plaintiff had full strength throughout her body, except for some "mild rotator cuff weakness on the right." (482). By September 24, 2013, Dr. Alexander reported that Plaintiff had regained full strength in her right arm. (516) ("She has 5/5 strength on my examination. She is neurologically intact.").

13

would not be able to perform the accounts payable clerk's job if she were limited to only occasional reaching with the right hand. (52).

On December 8, 2014, the ALJ issued his decision, denying Plaintiff's application. (11-24). The ALJ framed the issue as being whether Plaintiff was disabled at any time between the alleged onset date of her disability, November 11, 2012, and her date last insured ("DLI"), December 31, 2012. (11).

The ALJ applied the familiar five-step sequential analysis for evaluating disability claims and found, at Step 1, that Plaintiff had not engaged in substantial gainful activity during the relevant period. At Step 2, the ALJ found that Plaintiff had severe impairments (right rotator cuff tear, chronic cervicalgia and degenerative disc disease of the lumbar spine) and non-severe impairments (COPD, hypertension, plantar fasciitis, dyslipidemia, depression and anxiety). (13-14). At Step 3 of the sequential analysis, the ALJ found that none of Plaintiff's impairments were severe enough to meet or equal the severity of a listed impairment. (15-16).

Prior to reaching Step 4, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b)[2] except that she should avoid climbing ladders, ropes and scaffolds. She should never reach overhead using the right upper extremity. She should also avoid hazardous machinery and unprotected heights.

---

[2]This regulation states in pertinent part that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (West 2017).

(16).

In explaining how he arrived at this RFC determination, the ALJ reviewed the
medical record, and indicated the weight that he gave to the various medical opinions.
(16-23). For example, the ALJ gave "considerable weight" to Wadsworth's opinion that
Plaintiff would be able to return to Work on December 17, 2012 (21), but "little weight"
to Whitbeck's opinions, because they were "conflicting." (22). The ALJ noted, however,
that to the extent Dr. Whitbeck had indicated Plaintiff had a marked disability related to
her neck, such "disability occurred after the claimant's date last insured and [was]
contradicted by other substantial evidence of record." (22). The ALJ also discussed the
opinions offered by Dr. Hausmann, and stated that he gave Hausmann's August 2013
opinion (in which Hausmann indicated that Plaintiff could return to work with no
overhead lifting and with no lifting in excess of 30 to 40 pounds) "great weight" because
it was supported by the objective findings from his examination of the claimant." (22).
The ALJ further stated that his RFC determination was consistent with Plaintiff's
activities of daily living, which included caring for dogs, cats and goats. (23).

At Step 4 of the sequential analysis, the ALJ found that Plaintiff could perform
her past relevant work as an accounts payable clerk. (23). Consequently, the ALJ
found that Plaintiff was not disabled (at any time during the relevant period November
11, 2012 - December 31, 2012) without reaching Step 5 of the sequential analysis.

On April 29, 2016, Plaintiff commenced this action. On March 20, 2017, Plaintiff
filed the subject motion [#10] for judgment on the pleadings. On May 19, 2017,
Defendant filed the subject-cross motion for judgment on the pleadings. On June 15,
2017, Plaintiff filed a reply [#15]. On October 20, 2017, the Court heard oral argument,

15

with Plaintiff's counsel appearing in person, and Defendant's counsel appearing by telephone.

Plaintiff's memorandum of law [#10] in support of her motion asserts three arguments: 1) the ALJ erred at Step 2 of the sequential analysis by failing to discuss all of the medical impairments mentioned in the medical record; 2) the ALJ's RFC determination was not supported by substantial evidence to the extent that it was based upon medical opinion evidence rendered prior to Plaintiff's shoulder surgery and neck surgery; and 3) the ALJ failed to provide "good reasons" for the weight that he assigned to medical opinions, and "cherry picked" opinion evidence that was unfavorable to Plaintiff's claim.

Plaintiff's reply memorandum [#15], while not expressly abandoning the arguments in her initial memorandum, focuses on an entirely new argument: That the ALJ erred by failing to assign proper weight to the opinion of Dr. Wadsworth, which, Plaintiff claims, was the only opinion concerning her condition prior to her date-last-insured. According to Plaintiff, Wadsworth's opinion establishes that she was disabled prior to her date-last-insured, and the rest of the medical evidence is unimportant. Indeed, Plaintiff argues that the medical evidence after December 31, 2012, comprising the majority of the administrative record, is irrelevant to her functioning prior to her last-insured date.[3] Alternatively, Plaintiff argues that to the extent the ALJ rejected Wadsworth's opinion, he failed in his duty to develop the record by obtaining another medical opinion concerning Plaintiff's condition prior to her last-insured date.

---

[3]Pl. Reply Memo [#15] at p. 3 ("Although the ALJ purportedly relied on the other medical opinions of record [other than Wadsworth's] to support his RFC finding, this would have been improper as none of the opinions of record pertain to Plaintiff's functioning before the date last insured.").

At oral argument, Plaintiff's counsel expressly withdrew her argument concerning the ALJ's alleged error at Step 2 of the sequential analysis, as well as her argument that the ALJ had erred by considering medical opinions offered prior to Plaintiff's surgeries. Instead, Plaintiff's counsel makes yet another new argument, purportedly related to the argument in her reply brief concerning alleged "cherry picking" of evidence by the ALJ. More specifically, Plaintiff's counsel argues that Wadsworth's opinions, rendered in November 2012 and December 2012, establish that Plaintiff was disabled prior to her date-last-insured, albeit temporarily; that thereafter, the medical evidence establishes that Plaintiff was capable of working, but only at the sedentary level; that Plaintiff could not perform her past sedentary work; and that the ALJ should have applied the grids to find that she was disabled, due to her age, education and work experience.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If the Commissioner applies the correct standards and the decision is supported by substantial evidence, "the Commissioner's decision must be upheld, even where substantial evidence may support the plaintiff's position and despite

that the Court's independent analysis of the evidence may differ from the Secretary's." *Alves v. Colvin*, No. 13-CV-3898 RPP, 2014 WL 4827886, at *5 (S.D.N.Y. Sept. 29, 2014) (citation omitted).

## DISCUSSION

Plaintiff has expressly withdrawn her objections to the ALJ's determination at Step 2 of the sequential analysis, and her contention that the ALJ erred by relying upon "stale" pre-surgery medical opinions.[4]   All of Plaintiff's remaining objections pertain to the ALJ's RFC determination, and, more specifically, his treatment of the various medical opinions.  The Court will first address the arguments contained in Plaintiff's papers which have not been abandoned, and then address the arguments made for the first time at oral argument.

Plaintiff begins by arguing that the ALJ acted inconsistently, by giving "little weight" to Whitbeck's June 2014 opinion, while assigning great weight to Hausmann's opinions.[5]   According to Plaintiff, the ALJ gave little weight to Whitbeck's opinion because it was issued "after [her] date last insured" but inconsistently gave greater weight to Hausmann's opinions, which were also rendered after the date-last-insured. However, the premise of this argument is false, since the ALJ did not indicate that he gave little weight to Whitbeck's opinion because it was issued after the last-insured date.  Rather, the ALJ stated that he gave such weight to Whitbeck's various opinions primarily because they did not agree.  Secondarily, the ALJ stated that he gave little

---

[4]When making this latter argument, the attorney who drafted Plaintiff's initial memo of law [#10] apparently overlooked the significance of Plaintiff's last-insured date.

[5]Pl. Memo of Law [#10] at p. 18.

weight to Whitbeck's opinion (in formulating an RFC) because the "marked *disability*" to which Whitbeck referred in his June 2014 report did not arise until well past the last-insured date. (22). That statement by the ALJ is supported by substantial evidence, as prior to March 2014, Whitbeck had indicated that Plaintiff had no disability whatsoever related to her neck pain. Accordingly, that aspect of Plaintiff's motion lacks merit and is denied.

Next, Plaintiff contends that the ALJ treated Hausmann's opinions inconsistently, by giving one "some weight," while giving another, later opinion "great weight," without offering good reasons for treating the two opinions differently.[6] However, the Court again disagrees, as the ALJ explained why he treated the two opinions differently. Specifically, the ALJ indicated that he gave only "some weight" to Hausmann's earlier opinion, rendered on May 22, 2013, because Plaintiff's condition subsequently improved. (19) ("I afford this opinion some weight given the claimant's injuries and the objective findings; however, the claimant experienced further improvement."). In sum, the ALJ indicated that he gave less weight to the earlier opinion because it was rendered immediately after Plaintiff's rotator-cuff surgery, and before she had reached maximum medical improvement. (493). Accordingly, this aspect of Plaintiff's motion also lacks merit and is denied.

Plaintiff next contends that the ALJ erred by purportedly giving Hausmann's opinions "great weight," while failing to include *all* of the limitations identified by Hausmann in the RFC determination.[7] In particular, Plaintiff contends that the RFC

---

[6]Pl. Memo of Law [#10] at p. 19 (citing pages 19 and 22 of the ALJ's decision).

[7]Pl. Memo of Law [#10] at p. 19.

finding should have included limitations relating to her "occasional numbness in the right hand and mid and lower back" that were mentioned in Hausmann's report dated August 26, 2013. (486-489). Again, however, Plaintiff's argument is inaccurate, as Hausmann did not find that Plaintiff in fact had "occasional numbness in the right hand and mid and lower back." Rather, Hausmann merely noted that Plaintiff subjectively claimed to have such numbness. (487). Hausmann's own examination findings were unremarkable. (488). Moreover, in the report which Plaintiff cites, Hausmann indicated that Plaintiff had only a "mild" disability, was able to return to work, and could lift up to "30 to 40 pounds" despite her alleged pain in her neck and back. (489).

For the reasons just stated, all of the arguments contained in Plaintiff's moving memorandum of law [#10] have either been withdrawn or lack merit.

Turning to Plaintiff's reply memorandum of law [#15], she made two entirely new arguments, namely, that the ALJ erred both by "fail[ing] to properly evaluate [Dr. Wadsworth's] opinions [and by] arbitrarily rel[ying] upon opinions that were [rendered] well beyond the insured period."[8] In that regard, Plaintiff asserted that Wadsworth's opinions "were the only opinions rendered before the date last insured."[9] At oral argument, Plaintiff's counsel, purporting to expand on these arguments, asserted the following: Wadsworth's reports show that Plaintiff was temporarily disabled as of the last-insured date;[10] that thereafter, the medical evidence shows that Plaintiff could work,

---

[8]Pl. Reply Memo [#15] at p. 2 This is the exact opposite of what Plaintiff argued in her moving brief.

[9]Pl. Reply Memo [#15] at p. 2.

[10]At oral argument Plaintiff's counsel stated that Wadsworth opined that Plaintiff was unable to work at any job. That is not correct. Wadsworth merely indicated that Plaintiff could not return to her usual job, temporarily. Wadsworth expressed no opinion about Plaintiff's ability to perform any other type

but only at the sedentary level; that even though Plaintiff's past work as an accounts payable clerk was sedentary, she would not be able to perform that job if she was restricted to only occasional reaching; and therefore, at Step 5, since Plaintiff could perform only sedentary work, and was approaching advanced age, the ALJ should have applied the grids to find that Plaintiff was disabled.

Of course, the Court has no obligation to consider any of these arguments.  It is well settled that a court may disregard arguments raised for the first time in a reply brief, let alone arguments that were never raised until oral argument.  However, even if the Court considers Plaintiff's untimely arguments, they lack merit.

To begin with, the factual premise of Plaintiff's argument is mistaken. Specifically, Plaintiff repeatedly states, in her reply brief and during oral argument, that Wadsworth is the only doctor to have provided an opinion prior to Plaintiff's last-insured date.  However, that is incorrect, as Dr. Alexander also rendered opinions prior to December 31, 2012.  Alexander examined Plaintiff on November 16, 2012, December 14, 2012, December 28, 2012 and December 31, 2012. (437-438, 433-434, 435-436, 431-432).  On November 16th, Alexander noted that Plaintiff was still working, "with restrictions," and had a "moderate, temporary" disability. (438).  On December 14th, Alexander reported that Wadsworth had taken Plaintiff "out" of work, but opined that Plaintiff had only a "mild, temporary" disability. (434).  On December 28th, Alexander indicated that Plaintiff had been cleared to work with "restrictions," and had a "moderate" disability.  (436).  And finally, on December 31st, Alexander attributed Plaintiff's low back pain to "low back strain," and recommended physical therapy,

---

of work.  And, in any event, Plaintiff was working on restricted duty at Walmart at the time.

without indicating any particular level of disability due to such condition. (432).

In any event, the medical evidence from November 2012 and December 2012 indicates only that Plaintiff was temporarily disabled from working at her bakery job, which is not sufficient to establish disability. *See, e.g., Hazelton v. Comm'r of Soc. Sec.*, No. 6:16-CV-0427 (GTS), 2017 WL 1437194, at *6 (N.D.N.Y. Apr. 21, 2017) ("[E]ven if accepted, Dr. Caldwell's opinion that Plaintiff would be unable to work for three to six months does not establish the 12-month duration required to establish disability under the applicable regulations.") (citation omitted).

Additionally, while Plaintiff's counsel asserted, during oral argument, that the medical evidence from 2013 and 2014 indicated that Plaintiff could work only at the sedentary level, that is also inaccurate.[11]  For example, as the ALJ recognized, on August 26, 2013, Dr. Hausmann indicated that Plaintiff could return to her bakery job, and lift up to "30 to 40 pounds," provided that she avoid repetitive overhead lifting with her right arm. (22, 489).

Moreover, even assuming *arguendo* that the Court otherwise agreed with Plaintiff's theory proffered during oral argument, she has not shown that she would be unable to perform her past work as an accounts payable clerk due to an inability to reach.  Rather, Plaintiff merely points out that in response to a hypothetical posed by the ALJ, the VE testified that *if* a claimant was limited to only occasional reaching with the right arm, she would not be able to perform Plaintiff's past work as an accounts payable clerk. (52).  However, the ALJ did not include such a limitation in the RFC, and

---

[11]Sedentary work "involves lifting no more than 10 pounds at a time, sitting, and a certain amount of walking or standing." *Penfield v. Colvin*, 563 F. App'x 839, 840 n. 1 (2d Cir. Apr. 29, 2014) (citing 20 C.F.R. § 404.1567(a); internal quotation marks omitted).

Plaintiff has not shown (or even argued) that such determination was erroneous.[12]

CONCLUSION

Plaintiff's motion [#10] for judgment on the pleadings is denied, Defendant's

cross-motion [#12] for the same relief is granted, and this action is dismissed.

So Ordered.

Dated: Rochester, New York            ENTER:
      November 7, 2017

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

---

[12]The ALJ's RFC determination limited Plaintiff to "never reach[ing] *overhead* using the right upper extremity." (16) (emphasis added).  The VE testified that a claimant could perform Plaintiff's past work as an accounts payable clerk even with such limitation. (51).  The ALJ later asked the VE to consider a further limitation of "occasionally reaching with the right upper extremity" generally (not overhead), and the VE answered that with that additional limitation,  a claimant would not be able to perform the accounts payable clerk's job. (51-52).